IRWIN COHEN, Plaintiff-Appellant and Counterdefendant-Appellant, v. CONTINENTAL ILLINOIS NATIONAL BANK AND TRUST COMPANY OF CHICAGO, Defendant-Appellee and Counterplaintiff-Appellee (Allan J. Ehrlich *et al.*, Counterdefendants).

First District (3rd Division)   No. 1—92—1490

Opinion filed June 30, 1993.

Greenberg, Keele, Lunn & Aronberg, of Chicago (Nathan H. Lichtenstein and David H. Sachs, of counsel), for appellant.

Francis X. Grossi, Jr., and Timothy A. Wolfe, both of Katten, Muchin & Zavis, of Chicago, for appellee.

JUSTICE CERDA delivered the opinion of the court:

Plaintiff, Irwin Cohen, filed this declaratory judgment action seeking determination of rights to a $75,000 certificate of deposit (CD) and the interest accrued, which was held by defendant, Continental Illinois National Bank & Trust Company of Chicago (Bank). On appeal, plaintiff asserts that (1) the trial court erred when it denied his motion for summary judgment and granted defendant's cross-motion for summary judgment; and (2) defendant improperly froze Mark I, Inc.'s (Mark I's) prebankruptcy petition debt at $75,000 and applied subsequent payments from the debtor in possession to post-bankruptcy petition debts. We affirm in part and reverse in part.

On July 8, 1983, Mark I entered into a loan and security agreement (Loan Agreement) with defendant Bank whereby defendant agreed to advance money to Mark I on a revolving line of credit. On January 7, 1985, plaintiff, Irwin Cohen, executed a "Collateral Agreement Covering Loans to Third Party" (Collateral Agreement). Pursuant to the Collateral Agreement's terms, plaintiff deposited a $75,000 CD with defendant to secure Mark I's debt. Each month through January 7, 1989, defendant forwarded the interest earned on the CD to plaintiff.

On August 21, 1985, Mark I filed a voluntary bankruptcy petition for reorganization under chapter 11 of the Bankruptcy Act. As a debtor in possession, Mark I operated the business during the bankruptcy's pendency. With the bankruptcy court's approval, but without plaintiff's knowledge or approval, defendant and Mark I entered into

an agreed order on December 11, 1985, which allowed defendant to make loans to Mark I as debtor in possession.

A relevant part of the agreed order provides:

"(h) Proceeds or payments received by [Continental] with respect to the property of [Mark I] upon which [Continental] had security interests on the date of the petition shall be first applied by [Continental] upon the indebtedness owing by [Mark I] to [Continental] and then, after full payment thereof, to the indebtedness owing by the Debtor in Possession to [Continental] *** ."

Among other provisions, the agreed order (1) provided for the repayment of Mark I's prebankruptcy petition debt and the use of cash collateral by the debtor in possession during the pendency of the bankruptcy proceedings; (2) granted the debtor in possession authority to assume all of Mark I's prepetition debt and to provide defendant with a valid, perfected, and enforceable first priority security interest in, and a lien on, all the assets of Mark I and the debtor in possession in exchange for defendant's extension of a continuing line of credit to the debtor in possession; and (3) required defendant to apply payments received from the debtor in possession towards Mark I's outstanding prepetition debt prior to applying any of the debtor in possession's payments to the post-bankruptcy petition debt.

Pursuant to the agreed order, defendant applied the incoming funds from the debtor in possession to reduce Mark I's prepetition debt until the amount of principal outstanding was $75,000. Defendant then retained plaintiff's CD to fully satisfy the prepetition debt. Subsequently, the debtor in possession's payments were used to reduce Mark I's post-petition debt.

In November 1988, plaintiff inquired about the status of his CD, which was due to expire on January 7, 1989. Plaintiff insisted that he was entitled to the funds since his obligations under the Collateral Agreement had expired, but defendant refused to release the funds to him. Instead, defendant transferred the funds into a money market account and stopped forwarding any accruing interest to plaintiff.

On August 31, 1989, plaintiff filed an action for declaratory judgment seeking determination of the parties' rights to the funds. A year later, defendant sent plaintiff a letter stating that it intended to apply all of the funds, plus the accrued interest, to Mark I's prepetition debt. Plaintiff filed a motion to prohibit such application of the funds, but the motion was denied. Defendant then removed the funds, totaling about $85,000, from plaintiff's bank account.

It was agreed by the parties that there were no disputed issues of material fact, and both sides moved for summary judgment. Denying plaintiff's motion, the trial court found that (1) the Collateral Agreement was enforceable as to the prepetition debts of Mark I only; (2) that defendant used plaintiff's collateral to reduce prepetition debt only; (3) the agreed order did not mandate defendant to reduce the prepetition debt solely from the payments made by the debtor in possession; and (4) defendant was entitled to accrue interest on the collateral amount.

Since the facts of this case are undisputed, the only issue to be resolved by this court is a question of law. There are several areas of agreement between the parties. Both parties agree that Mark I as debtor under the Collateral Agreement and Mark I as debtor in possession under the bankruptcy proceedings are different entities. As such, plaintiff is not obligated to pay the debtor in possession's post-petition debts. In addition, defendant was not limited to reducing the prepetition debts only from the debtor in possession's payments.

Thus, the main issue on appeal is whether defendant improperly froze Mark I's prepetition debt at $75,000 without seizing the $75,000 CD before using the debtor in possession's payments to reduce its post-petition debt.

Plaintiff's argument on appeal can be summarized as follows. Plaintiff asserts that defendant must return his collateral funds because defendant's manipulation of the prepetition and post-petition account balances was in bad faith and violated the terms of the bankruptcy court's agreed order. Plaintiff stresses that defendant created an artificial prepetition balance of exactly $75,000, froze that balance, and then applied the funds received from the debtor in possession to its post-petition debt. Years later, plaintiff's funds were seized and applied to the outstanding prepetition debt. Plaintiff concludes that the manipulation of Mark I's prepetition and post-petition debts was a scheme to improperly maintain control of the funds as collateral for the debtor in possession's post-petition debt.

Furthermore, plaintiff contends that this application of funds violated the bankruptcy court's agreed order. If the funds had been applied as the agreed order provided, plaintiff argues, the prepetition debt would have been paid in full and plaintiff's obligations under the Collateral Agreement would have been terminated.

In response, defendant asserts that it simply invoked the rights plaintiff granted it under the Collateral Agreement, which clearly and unambiguously specifies that defendant could resort to plaintiff's collateral for payment of any of Mark I's liabilities even without Mark

I's default. Defendant stresses that it used plaintiff's collateral only to reduce Mark I's prepetition debt, not obligations arising from post-petition credit extensions to the debtor in possession.

Furthermore, defendant maintains that plaintiff misinterprets the bankruptcy court's agreed order, which directed the debtor in possession's use of cash collateral and governed the application of its payments to defendant. It specifies how payments for the debtor in possession were to be used in debt reduction, not that defendant was obligated to reduce Mark I's prepetition debt exclusively from the debtor in possession's payments. Moreover, defendant argues that it did not refer, relate to, or directly affect sums procured from sources other than the debtor in possession. Defendant indicates that the agreed order explicitly recognizes "the Bank's existing rights and interest in and to the PrePetition Collateral" and "grants to the Bank a valid, perfected enforceable first priority security interest in and lien upon *** Pre-Petition Collateral."

Moreover, defendant argues, even if plaintiff's interpretation of the agreed order were accepted, his reliance on it is misplaced because the bankruptcy court has no jurisdiction to alter contractual rights between two nondebtors.

■ The Collateral Agreement, not the bankruptcy court's agreed order, controls the rights and liabilities of the parties in this appeal. A guarantor's liability is determined from the guarantee contract, which is interpreted by the general principles of contract construction. (*Du Quoin State Bank v. Daulby* (1983), 115 Ill. App. 3d 183, 185, 450 N.E.2d 347.) Even where there are broad statements of guarantor liability, an unambiguous contract must be enforced as written. *Du Quoin State Bank*, 115 Ill. App. 3d at 185.

■ The meaning of a guaranty agreement is a matter of law to be determined by the court. (*Exchange National Bank v. Bergman* (1987), 153 Ill. App. 3d 470, 472, 505 N.E.2d 1236.) The bankruptcy court, however, does not have jurisdiction to alter the contractual rights created by the original Collateral Agreement. Guaranty agreements are strictly construed in favor of the guarantor, who is to be accorded the benefit of any doubt that may arise from the contract language. (*Exchange National Bank*, 153 Ill. App. 3d at 473.) A guarantor is not liable for anything to which he did not agree. Specifically, the guarantor is not responsible for any post-petition debt incurred by the debtor in possession in a bankruptcy proceeding. (*Bank of New England, N.A. v. Klein* (S.D. Tex. 1988), 86 Bankr. 897, 899.) If the creditor and principal have entered into an agreement materially different from that contemplated by the instrument of guaranty, the

guarantor will be released. *Exchange National Bank*, 153 Ill. App. 3d at 473.

The Collateral Agreement provides:

"[Plaintiff] agree(s) with [defendant] that, to secure the payment of all obligations of [Mark I] or [plaintiff] (or any of them) to [defendant], howsoever created, arising or evidenced, whether direct or indirect, absolute or contingent, or now or hereafter existing, or due or to become due (hereinafter called the 'Liabilities'), [plaintiff] hereby assign(s) to [defendant], and agree(s) that [defendant] shall have a lien upon and security interest in, all interest of [plaintiff], whether now existing or hereafter arising, in CINB Certificate of Deposit in the amount of $75,000.00 C/D# 09—518621 in the name of Irwin Cohen evidencing deposits in Continental Illinois National Bank & Trust Company of Chicago and any certificates of deposit or other property which may from time to time be acquired directly or indirectly using the proceeds of such property (all hereinafter called 'Collateral').

[Defendant] may from time to time, whether before or after any of the Liabilities shall become due and payable, without notice to [plaintiff] (or any of them), take all or any of the following actions: (a) obtain a security interest in any property, in addition to the Collateral, to secure any of the Liabilities, (b) obtain the primary or secondary liability of any party or parties, in addition to [Mark I] or [plaintiff] (or any of them) with respect to any of the Liabilities, (c) extend or renew for any period (whether or not longer than the original period) or exchange any of the Liabilities or release or compromise any obligation of any nature of any party with respect thereto, (d) surrender, release or exchange all or any part of any property, in addition to the Collateral, securing any of the Liabilities, or compromise or extend or renew for any period (whether or not longer than the original period) any obligations of any nature of any party with respect to any such property, and (e) resort to the Collateral for payment of any of the Liabilities whether or not it shall have resorted to any other property securing the Liabilities or shall have proceeded against any party primarily or secondarily liable on any of the Liabilities.

[Plaintiff] hereby waive(s) notice of the existence or creation of all or any of the Liabilities, and agree(s) that no action of [defendant] permitted hereunder shall impair or affect the rights of [defendant] and to the Collateral."

■ This Collateral Agreement gives defendant the right to use plaintiff's collateral funds to repay any of Mark I's prepetition debts. Since defendant used the CD to repay the outstanding $75,000 balance of prepetition debt, the trial court did not err in granting summary judgment to defendant.

The agreed order stated how payments from the debtor in possession were to be used to reduce the debt. However, the agreed order does not direct the defendant Bank to reduce Mark I's prepetition debt exclusively from the debtor in possession's payments. Defendant was free to reduce Mark I's prepetition debt from plaintiff's certificate of deposit and to pay Mark I's remaining pre- and post-petition debts according to the terms of the Agreed Order.

Next, plaintiff asserts that defendant had no right to deprive him of the interest accrued on the funds deposited at defendant bank. Plaintiff argues that the Collateral Agreement was silent as to any interest earned. Since the parties did not specifically state that interest was included in the description of the collateral, plaintiff maintains that this silence should be construed in his favor. Without an express inclusion, plaintiff concludes that the trial court erred when it inferred defendant's right to interest on the CD.

Where there is no ambiguity, the contract language alone establishes the intention of the parties. (*S & F Corp. v. American Express Co.* (1978), 60 Ill. App. 3d 824, 377 N.E.2d 73.) Pursuant to the Collateral Agreement, defendant was not entitled to any interest from the CD. Even if it were entitled to seize the CD and the accrued interest to satisfy the prepetition debts to Mark I, the prepetition debt was only $75,000 when the funds from the CD were seized. Thus, any funds in excess of $75,000 could only have been applied to the debtor in possession's post-petition debts, which were not covered by the Collateral Agreement. Consequently, the trial court erred in not requiring the interest seized by defendant to be returned to plaintiff.

Based on the foregoing, the circuit court summary judgment granting the $75,000 CD to defendant is affirmed. The circuit court summary judgment granting the CD's interest to defendant is reversed. Accordingly, the interest accrued on the CD is to be given to plaintiff.

Affirmed in part; reversed in part.

TULLY, P.J., and RIZZI, J., concur.