821 N.E.2d 643 (2004)
354 Ill. App.3d 572
290 Ill.Dec. 331
Michael SCHULSON, Plaintiff-Appellant,
v.
D'ANCONA AND PFLAUM LLC; Dean A. Dickie; Adelman, Gettleman, Merens, Berish and Carter, Ltd.; Howard L. Adelman; Sonnenschein, Nath and Rosenthal LLP; and Gerald Sherman, Defendants-Appellees.
No. 1-03-1653.
Appellate Court of Illinois, First District, First Division.
November 22, 2004.
Rehearing Denied January 28, 2005.
*644 Elliot R. Schiff of Schiff, Gorman & Krkljes, Richard A. Ginsburg, Chicago, for Appellant.
Perkins Coie, LLC, Chicago (William T. Cahill and Jeanne Cullen, of counsel), for Appellees Dean A. Dickie and D'Ancona & Pflaum.
Donohue Brown Mathewson & Smyth, Chicago (J. Kent Mathewson, John J. Duffy and Karen Kies DeGrand, of counsel), for Appellees Howard L. Adelman and Adelman, Gettleman, Merens, Berish & Carter, Ltd.
Presiding Justice CAHILL delivered the opinion of the court:
We are asked to decide whether a person sued for breach of contract may bring a third-party action for implied indemnity against lawyers who drafted the contract. The trial court held that a theory of implied indemnity will not support a third-party action where the underlying lawsuit against the third-party plaintiff is grounded exclusively in breach of contract.
Plaintiff Michael Schulson filed a four-count legal malpractice action against Sonnenschein, Nath & Rosenthal LLP and Gerald J. Sherman (collectively, Sonnenschein), D'Ancona & Pflaum LLC and Dean A. Dickie (collectively, D'Ancona) and Adelman, Gettleman, Merens, Berish & Carter, Ltd., and Howard L. Adelman (collectively, Adelman). Because this case is related to Bank of America National Trust & Savings Ass'n v. Schulson, 305 Ill.App.3d 941, 239 Ill.Dec. 462, 714 N.E.2d 20 (1999), we begin with a summary of that case.
On September 30, 1991, Bank of America (bank) executed a loan agreement with Lunan Family Restaurants LP (Lunan) in which the bank agreed to loan Lunan $13.5 million to finance the purchase of about 30 Wags restaurants. Schulson, a general partner of Lunan, personally guaranteed $3 million of the loan. The guarantee clause contained a "burn-down" provision that acted to reduce Schulson's guarantee *645 obligation "by an amount equal to 36% of any principal payments" made on the loan. Sonnenschein represented Schulson in his dealings with the bank and participated in drafting the guarantee clause in the loan agreement.
In 1994, Lunan was struggling financially. On the advice of Sonnenschein, Lunan filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (11 U.S.C. § 1101 et seq. (1994)). The bankruptcy constituted a default under the loan agreement.
On December 15, 1994, the bank filed a complaint against Schulson for the amount due under the guarantee clause. D'Ancona and Adelman represented Schulson in the lawsuit. Sonnenschein had terminated its attorney-client relationship with Schulson around the same time as the bankruptcy filing.
At issue in the underlying lawsuit was whether the burn-down provision applied to payments made after Lunan defaulted on the loan. Schulson argued payments made through the bankruptcy proceeding were calculable under the burn-down provision and reduced his obligation. The trial court agreed and calculated Schulson's obligation after considering payments made on the loan principle through the bankruptcy estate. We reversed:
"We find only one reasonable interpretation that gives meaning and weight to all the guaranties' provisions  the one the bank suggests. [Schulson's] obligations are triggered upon [Lunan's] default. The bank is then entitled to prompt payment, so the amount owing must be calculable at that point. The burn down applies only to principal payments that have been made at that time." Bank of America, 305 Ill.App.3d at 950, 239 Ill.Dec. 462, 714 N.E.2d 20.
On June 30, 1999, we entered an order remanding the case with directions that the trial court recalculate the amount Schulson owed the bank. Bank of America, 305 Ill.App.3d at 952, 239 Ill.Dec. 462, 714 N.E.2d 20.
On remand, the trial court calculated Schulson's obligation under the guarantee at $4,500,000. This amount included interest and attorney fees owed to the bank under the contract.
On December 29, 2000, Schulson initiated this action by filing a first amended complaint against Sonnenschein, D'Ancona and Adelman. Count I of the complaint alleged Sonnenschein was negligent in drafting the guarantee clause in 1991 and advising Lunan to file bankruptcy in 1994. Schulson maintained there were alternatives to bankruptcy that would have limited his liability under the guarantee. Count II alleged D'Ancona was negligent for failing to file an implied indemnity action against Sonnenschein on behalf of Schulson. Count III was identical to count II but was brought against Adelman.
On September 14, 2001, the trial court dismissed counts II and III of plaintiff's complaint. The court found there was no ground on which D'Ancona and Adelman could have filed an implied indemnity action on Schulson's behalf because: (1) no pre-tort relationship existed between Schulson and Sonnenschein; and (2) Sonnenschein was a stranger to the contract between the bank and Schulson. The court denied Sonnenschein's motion to dismiss count I.
On January 30, 2002, the trial court granted Sonnenschein's motion to reconsider the September 14, 2001, order in part and dismissed count I to the extent it alleged negligence by Sonnenschein in drafting the guarantee clause. The court ruled this claim, which arose in 1991, was barred by the six-year statute of repose for legal malpractice actions (735 ILCS *646 5/13-214.3 (West 2000)). The trial court denied Schulson's motion to reconsider the dismissal of counts II and III.
Schulson filed a third amended complaint on May 17, 2002. Count I of the complaint alleged Sonnenschein was negligent in advising Lunan to file for bankruptcy. Count II alleged Sonnenschein was negligent in drafting the guarantee clause. Schulson recognized in a footnote that this claim had been dismissed already as barred by the statute of repose. Count III alleged D'Ancona was negligent for failing to file either a direct negligence or implied indemnity action against Sonnenschein for its negligent drafting of the guarantee clause. Count IV was identical to count III but was brought against Adelman. Schulson recognized in footnotes that the claims alleging failure to file an implied indemnity action had been dismissed. Schulson included these claims "to preserve the record in the event that further appellate decisions or alternative rulings allow reconsideration of the issue."
D'Ancona and Adelman moved to dismiss Schulson's third amended complaint under section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2000)). D'Ancona and Adelman argued they could not be found negligent for failing to pursue a direct cause of action against Sonnenschein on Schulson's behalf because such cause of action would have been premature. The trial court agreed. In an order entered May 30, 2003, the court found Schulson did not incur damages, a prerequisite to bringing a legal malpractice claim, until after the statute of repose expired. The court also reaffirmed its earlier order dismissing count II of Schulson's third amended complaint against Sonnenschein for negligent drafting of the guarantee clause. The court denied Sonnenschein's motion to dismiss count I.
The trial court entered a finding under Supreme Court Rule 304(a) (155 Ill.2d R. 304(a)) that there was no just reason for delaying either enforcement or appeal of the orders entered September 14, 2001, January 30, 2002, and May 30, 2003. Schulson appeals from these orders, arguing the trial court erred in ruling: (1) he could not bring an implied indemnity action against Sonnenschein because there was no pre-tort relationship; and (2) a direct action against Sonnenschein for negligent drafting of the guarantee clause would have been premature. Schulson's claims against Sonnenschein are not at issue in this appeal.
Our review of a dismissal under section 2-619 of the Code is de novo. Van Meter v. Darien Park District, 207 Ill.2d 359, 368, 278 Ill.Dec. 555, 799 N.E.2d 273 (2003).
Schulson argues the trial court erred in dismissing his claims against D'Ancona and Adelman for failure to file an implied indemnity action against Sonnenschein in the underlying lawsuit. Schulson maintains the trial court incorrectly found no pre-tort relationship existed between Schulson and Sonnenschein. Schulson also argues there are no grounds in the law for the court's reliance on its finding that Sonnenschein was a "stranger to the contract" between the bank and Schulson.
A third-party claim is the procedural device by which a defendant may bring an additional party into a lawsuit. Kerschner v. Weiss & Co., 282 Ill.App.3d 497, 502, 217 Ill.Dec. 775, 667 N.E.2d 1351 (1996). Third-party actions are premised on derivative liability. Kerschner, 282 Ill.App.3d at 502, 217 Ill.Dec. 775, 667 N.E.2d 1351. In other words, the liability of the third-party defendant is premised on the liability of the third-party plaintiff to the original plaintiff. Kerschner, 282 Ill. *647 App. 3d at 502, 217 Ill.Dec. 775, 667 N.E.2d 1351.
Third-party actions include actions for indemnity and contribution. Kerschner, 282 Ill.App.3d at 502, 217 Ill.Dec. 775, 667 N.E.2d 1351. Indemnity and contribution are mutually exclusive remedies for allocating a plaintiff's damages among joint tortfeasors. Kerschner, 282 Ill.App.3d at 502, 217 Ill.Dec. 775, 667 N.E.2d 1351. Contribution contemplates the distribution of loss among joint tortfeasors based on relative fault, whereas indemnity shifts the entire loss to the joint tortfeasor who was actually at fault. Kerschner, 282 Ill.App.3d at 502, 217 Ill.Dec. 775, 667 N.E.2d 1351. The right to indemnity may be express or implied by law. Kerschner, 282 Ill.App.3d at 502, 217 Ill.Dec. 775, 667 N.E.2d 1351.
Under implied indemnity, a promise to indemnify will be implied by law where a blameless party is derivatively liable to the plaintiff based on the party's relationship with the one who actually caused the plaintiff's injury. Kerschner, 282 Ill.App.3d at 503, 217 Ill.Dec. 775, 667 N.E.2d 1351. To state a cause of action for implied indemnity, a third-party complaint must allege: (1) a pre-tort relationship between the third-party plaintiff and the third-party defendant; and (2) a qualitative distinction between the conduct of the third-party plaintiff and the third-party defendant. Frazer v. A.F. Munsterman, Inc., 123 Ill.2d 245, 255, 123 Ill.Dec. 473, 527 N.E.2d 1248 (1988); Kerschner, 282 Ill.App.3d at 503, 217 Ill.Dec. 775, 667 N.E.2d 1351. Traditional pre-tort relationships that have given rise to a duty to indemnify include lessor and lessee, employer and employee, owner and lessee, and master and servant. Kerschner, 282 Ill.App.3d at 503-04, 217 Ill.Dec. 775, 667 N.E.2d 1351.
Schulson cites Kerschner in support of his argument that a pre-tort relationship existed between himself and Sonnenschein. D'Ancona and Adelman argue there can be no pre-tort relationship where the underlying lawsuit is grounded exclusively in contract. They cite Talandis Construction Corp. v. Illinois Building Authority, 23 Ill.App.3d 929, 321 N.E.2d 154 (1974), and Board of Education of High School District No. 88 v. Joseph J. Duffy Co., 97 Ill.App.2d 158, 240 N.E.2d 5 (1968).
The Kerschner court found a pre-tort relationship where the underlying lawsuit involved claims for wrongful termination of an accounting partnership, breach of fiduciary duty and tortious interference with contractual relations. Kerschner, 282 Ill.App.3d at 500, 217 Ill.Dec. 775, 667 N.E.2d 1351. The plaintiff in that case, an accounting firm, sued former partners who left the firm. Kerschner, 282 Ill.App.3d at 500, 217 Ill.Dec. 775, 667 N.E.2d 1351. The allegations against the partners included wrongful removal of funds from the partnership and solicitation of clients and employees. Kerschner, 282 Ill.App.3d at 501, 217 Ill.Dec. 775, 667 N.E.2d 1351. The partners filed an implied indemnity action against the law firm who advised them to pursue the course of conduct that the partnership alleged was wrongful. Kerschner, 282 Ill.App.3d at 500-01, 217 Ill.Dec. 775, 667 N.E.2d 1351. The court held the partners established a pre-tort relationship because the "attorney-client relationship existed prior to the conduct upon which [the partnership's] tort claims are predicated." Kerschner, 282 Ill.App.3d at 504, 217 Ill.Dec. 775, 667 N.E.2d 1351.
While we agree with Kerschner that a pre-tort relationship can exist between an attorney and client, Kerschner does not address the question that must be decided *648 here: whether a pre-tort relationship can exist where the underlying lawsuit is solely for breach of contract. This issue was addressed in Talandis and Duffy. These courts held a stranger to a contract between two parties cannot be held liable to indemnify one of the parties for breach of contract absent the stranger's express agreement to indemnify. Talandis, 23 Ill.App.3d at 935, 321 N.E.2d 154; Duffy, 97 Ill.App.2d at 162, 240 N.E.2d 5. Schulson argues Sonnenschein was not a stranger to the contract between Schulson and the bank because Sonnenschein assisted in drafting the contract. Schulson has not cited, nor are we aware of, an Illinois case that supports a finding that an attorney who drafted a contract is a party to that contract. We agree with Talandis and Duffy. An implied indemnity action against Sonnenschein was not available to Schulson in the underlying breach of contract claim because Sonnenschein was a stranger to the contract. There can be no pre-tort relationship under such circumstances.
The remaining cases cited by Schulson do not apply to this case. Schulson cites Meyers v. Underwood, 316 Ill.App.3d 970, 250 Ill.Dec. 154, 738 N.E.2d 118 (2000), Lucey v. Law Offices of Pretzel & Stouffer, Chartered, 301 Ill.App.3d 349, 234 Ill.Dec. 612, 703 N.E.2d 473 (1998), and Goodman v. Harbor Market, Ltd., 278 Ill.App.3d 684, 215 Ill.Dec. 263, 663 N.E.2d 13 (1995). These cases concern the accrual of legal malpractice actions and applicability of the six-year statute of repose for such actions (see 735 ILCS 5/13-214.3 (West 2002)). Schulson also cites Federal Deposit Insurance Corp. v. Wells, 164 F.R.D. 472, 474 (N.D.Ill.1995), and Chicago District Council of Carpenters Pension Fund v. Vanco Builders, Inc., No. 88 C 1229, 1989 WL 165111 (N.D.Ill. December 28, 1989). At issue in these cases was whether a defendant can maintain a third-party action for indemnity based on legal malpractice where actual damages have not yet accrued. These cases do not address the precise issue here: whether a pre-tort relationship can exist where the underlying lawsuit alleges breach of contract.
Schulson next argues the trial court erred in dismissing his claims against D'Ancona and Adelman for failure to file a direct action against Sonnenschein. The parties dispute whether Schulson could have filed a cause of action against Sonnenschein within the six-year statute of repose. So the issue is: when did Schulson incur actual damages, the predicate for a legal malpractice claim? Schulson argues actual damages arose in 1997 when the trial court in the underlying lawsuit awarded the bank attorney fees based on the fee-shifting provision in the loan agreement. D'Ancona and Adelman argue plaintiff did not accrue actual damages until June 1999, when this court reversed the outcome in the underlying lawsuit.
The fee-shifting provision required Schulson to pay all expenses, including attorney fees, that the bank incurred to enforce the guarantee. The trial court accepted Schulson's interpretation of the burn-down provision and found Schulson personally liable on the loan for $97,850.20 plus interest. The trial court also awarded the bank $320,022.35 in attorney fees and expenses for prosecuting the action. Schulson argues that the trial court attorney fee award, entered June 11, 1997, and indisputably within the six-year statute of repose, constitutes actual damages sufficient to sustain a direct cause of action against Sonnenschein.
We need not decide whether the attorney fee award constituted actual damages. Schulson did not plead that Sonnenschein was negligent in drafting the fee-shifting *649 provision. Rather, Schulson's third amended complaint alleged Sonnenschein was negligent in drafting the guarantee clause and advising Schulson to execute the agreement with knowledge that the burn-down provision did not represent Schulson's intent.
To sustain a cause of action for legal malpractice, a plaintiff must allege: (1) the existence of an attorney-client relationship establishing a duty on the part of the attorney; (2) a negligent act or omission constituting breach of that duty; (3) proximate cause establishing "but for" the attorney's negligence, the plaintiff would have prevailed in the underlying action; and (4) actual damages. Lucey, 301 Ill.App.3d at 353, 234 Ill.Dec. 612, 703 N.E.2d 473. "[T]he plaintiff must affirmatively plead and prove that he suffered injuries as a result of the attorney's malpractice." Lucey, 301 Ill.App.3d at 353, 234 Ill.Dec. 612, 703 N.E.2d 473. Schulson did not do so here. The damages Schulson claims would have supported a cause of action against Sonnenschein  the award of attorney fees for the bank under the fee-shifting provision  are not a result of the malpractice alleged to have been committed by Sonnenschein  drafting the guarantee clause and advising Schulson to sign the agreement with knowledge that the burn-down provision did not represent Schulson's intent. In fact, plaintiff's third amended complaint fails entirely to allege damages resulting from Sonnenschein's alleged negligence.
Schulson also argues he suffered actual damages when the trial court in the underlying action: (1) rejected Schulson's affirmative defense that the bank's action was premature because Lunan's bankruptcy proceeding was still pending; and (2) dismissed Schulson's counterclaim seeking a determination that the guarantee was one of collection. This argument suffers the same infirmity as does Schulson's argument that the attorney fee award constituted actual damages. There is no nexus between Sonnenschein's alleged negligence and the damages Schulson argues he suffered.
By failing to allege a viable cause of action against Sonnenschein, Schulson in turn failed to plead facts sufficient to support a cause of action against D'Ancona and Adelman for their failure to bring a direct legal malpractice action against Sonnenschein. Schulson's claims were properly dismissed on this ground. Barack Ferrazzano Kirschbaum Perlman & Nagelberg v. Loffredi, 342 Ill.App.3d 453, 461, 277 Ill.Dec. 111, 795 N.E.2d 779 (2003) (reviewing court may affirm the decision of a lower court on any ground appearing in the record).
The judgment of the circuit court is affirmed.
Affirmed.
BURKE and GARCIA, JJ., concur.