Shaw C. J.
delivered the opinion of the Court. This is *425 an action of assumpsit upon a' contract of guaranty not under seal. The contract of the defendant was written on the back of a lease, dated a few days after the lease itself, whereby the defendant, for the consideration of one dollar paid him by Samuel Salisbury Esq., the lessor and the plaintiff, guaranteed the fulfilment of the covenants of the within named Durivage, the lessee, as within expressed. This was an express contract upon a good consideration, and was therefore binding. The contract, however, bears a different date, and was made upon a different consideration from that of the fact of letting, namely, in consideration of a sum of money paid; and therefore the defendant was not a party to the lease, nor a co-lessee, nor a surety, nor was there any apparent privity between him and the lessee. It was an independent collateral guaranty, upon a distinct pecuniary consideration, and the lease is referred to for the purpose only of showing and ascertaining the nature and extent of the defendant’s obligation.
The defendant having promised to guarantee the fulfilment of all the lessee’s covenants, it becomes necessary to put a construction upon the indenture, to ascertain what those covenants are. The extent of those covenants will measure that of the defendant’s liability.
It has often been regretted by judges, in considering questions of this sort, that an instrument of such familiar" use as a lease for years, should be so loosely and inartificially drawn, and leave so much doubt and uncertainty as to the real intent and meaning of the parties. It probably arose from using at first a very brief and imperfect form, and from introducing particular provisions from time to time, as the necessity for them was felt, without much regard to the collocation of the particular clause introduced, or its connexion with the sentence in which it was inserted ; by means of which much obscurity and ambiguity has pervaded the instrument. The indenture in the present case partakes something of this character ; but in a less degree than some which have come under judicial consideration.
The main question is, whether there is any covenant on the part of the lessee to pay rent for more than the term of one year, in case of holding the tenement beyond that term ; and *426 the Court are of opinion that there is. The form is a short one, and the several express covenants are successively stated in one connected sentence. It is substantially this. “ And the said lessee doth promise to pay the said rent in quarter-yearly payments, &e. and to quit and deliver up the premises to the lessor, or his attorney, peaceably and quietly, at the end of the term, &c. and to pay the rent as above stated, and all taxes and duties levied ‘or to be levied thereon during the term and for such further time as the lessee may hold the same,” &c.
The natural import of this language is, a covenant not only to pay the rent during the term, but in the contingency of holding over the term, to pay the same rent, for such further time as he should hold over.
A circumstance that strengthens this conclusion is, that there is already, in the first clause of this covenant, an express undertaking and promise to pay the rent during the term, in quarterly payments, and the subsequent words, “ and to pay the rent as above stated,” would be nugatory, if not qualified by the subsequent words, “ and for such further time,” &c. To give a legal effect and sensible construction to both clauses, one must be considered as a covenant to pay the reserved rent, accruing during the term, and the other, to pay a like rent, in the event of holding over.
Another circumstance leading to the same conclusion is, the repetition of the words, “to pay the rent as above stated.” In many of the old forms of lease these words, in this place, were omitted. The language was somewhat like this ; — “to pay the rent in quarterly payments ; — to quit and deliver up, &c. at the end of the term; — and to pay all taxes, levied &c. during the term, and for such further time,” &c. Such was the form in the case of Brewer v. Knapp, cited in the argument. It would seem, therefore, to be a covenant only to pay taxes and duties for such further time, &c. and not rent. It might well have been argued that the lessor would be content to rely upon the implied obligation to pay rent in case of holding over, and only required an express covenant to pay taxes, where an obligation might be thought not to be implied by law. But here the word rent being inserted immediately *427 before taxes and duties, shows, we think, that the promise to pay, for such further time after the term as the lessee might hold, was intended to extend to both.
In this lease there are several distinct covenants, contained m one sentence. The sentence is in some measure elliptical, but it is to be construed as if the words, “ and the lessee doth promise,” were repeated at the beginning of each several covenant. Then it would read thus ; — and the said lessee doth promise to pay the said rent in quarterly payments, that is, during the term; — and the said lessee doth promise to quit and deliver up, &c. at the end of the term, in as good order, &c. ; — and the said lessee doth promise to pay the rent as above stated, and all taxes and duties levied or to be levied thereon, during the term, and for such further time as the lessee may hold the same, and not make or suffer any waste thereof.
There is a clause in this lease, after the reservation of rent at $ 250 per annum, “ and after the same rate for a shorter period of time.” Hence it is argued, that the parties could not have contemplated a holding for a longer period. But this reasoning is not conclusive. The event was contingent, and the parties might very naturally provide for each case, as well that of holding over, as that of an earlier termination of the term. It might so terminate in various ways ; but the clause probably had special reference to an agreement indorsed, that in case the lessor should sell or wish to build on the premises within the term, the lessee would surrender. But what is decisive upon this point is, that the parties did certainly look to the contingency of the lessee’s holding over for some purpose, because the words further time can have no other meaning, than time beyond the stipulated term of one year; and therefore the question is, not whether the parties introduced a stipulation in regard to payment of something after the end of the term, but whether such stipulation extended to the rent, or only to the taxes.
It was argued in behalf of the defendant, that putting the construction contended for, upon this lease, would in effect be t<~ construe it as a perpetual lease, or at least a lease for the life of the lessee; whereas the term is expressly limited to *428 one year, by the habendum. But we think the construction adopted does not enlarge the term, nor is it inconsistent with the habendum. It is a contract to have effect, provisionally after the expiration of the term. It is a question of construction. The habendum being for a certain term, were the covenant to pay rent general, without any thing to show, whether it intended rent during the term, or after it, the covenant would be qualified by the habendum, and it would be construed to be a covenant to pay the rent reserved, that is, during the term. But if a party covenants to pay rent beyond the term, though it does not enlarge or alter the term, it is still a valid contract and the law will give it effect; so is a contract to pay the rent of another or to guarantee the payment of such rent as another may be liable by law to pay, where there is no certain term. The habendum therefore is only one means of ascertaining the meaning of the parties, and of construing their contracts, where they are open to construction ; but will not limit the operation of such covenant, where, from that and all other parts of the instrument taken together, it appears that the covenant applies to a time, beyond the term limited by the habendum. Suppose, for illustration, that it were expressly recited in the lease, that whereas lessees do often hold over and continue to occupy, after the term specified in the habendum, and then stipulated, that if the lessee should so hold over and occupy after the term, he should pay the same rent and taxes, as he had stipulated to pay during the term ; can it be doubted that such a contract would be valid P If it would, it shows that the habendum does not of itself restrain and control the operation of the covenant, but only lends its aid, in ascertaining the intent of the parties in making it.
It was supposed in the argument, that the case of Brewer v. Knapp, 1 Pick. 332, was a case in point for the defendant; but we think, when closely considered, it will be found to have no bearing upon the present case.
That was an action of debt, not of covenant. There was no covenant for payment of rent beyond the term, which was one year, and in order to charge the defendants, who were described as sureties, it was necessary to the plaintiff’s case, *429 to show that they were liable on an implied contract for use and occupation. The express covenants in that lease, after the habendum for one year, and the reservation of rent, were, to pay the rent in quarterly payments, —to quit and deliver up, &c. — and to pay all taxes and duties levied or to be levied, during the time, and for such further time as the lessee may hold the same. Besides, all these express covenants were by the lessee, in the singular, a circumstance relied on by the Court, as well as that of the other defendants being designated as sureties, to show that the understanding of the parties was, that one only was to be the lessee, and the others, sureties. It is very manifest, that the Court did not consider the three defendants as bound by the express contract, to pay beyond the term, and the only question considered was, whether they stood in such a relation as to be liable on an implied contract, for use and occupation. After considering the various grounds upon which the claim was put for the plaintiff, the Court say, “ we see no principle upon which an implied engagement by two of the defendants can be well founded.” The decision in favor of the defendants in that case, affords no authority for the present, where the only question is as to the construction and effect of the express contract. There was no attempt made in that case to show, that the express contract for such further time &c. extended to the rent, as well as the taxes, and from the peculiar phraseology of the covenant in that case, veiy different from the present, we think it could not have been successfully maintained. At least we think, that if it may be supposed, that the Court were called upon to consider that covenant, still such is the difference in the terms of the two covenants, that a construction of one can afford very little aid in putting a construction upon the other.
The case of Tarbell v. Mackay has never been reported ; and upon referring to the record and documents in the clerk’s office, neither the report upon which the questions arose, nor a copy of the lease, can be found. It is impossible therefore now to determine what the questions in that case were, or what points were decided.
It is objected that the plaintiff should have given notice to the defendant, of the non-payment of the rent, and the case of *430 Oxford Bank v. Haynes, 8 Pick. 423, is relied upon. Without deciding whether the doctrines of that case can be extended beyond promissory notes and other mercantile contracts, we are of opinion, that upon the principles of that case, notice, in the present, was not necessary. It was held in that case, that where there had been no change of circumstances in the party whose contract was guaranteed, and where of course the guarantor had sustained no loss in consequence of there having been no demand on the parties to the note and notice to himself, he could not avail himself of such want of demand and notice in defence. In the present case, it does not appear that the defendant has suffered any inconvenience from the want of a more express notice, or that the lessee was in a worse condition when the demand was made, thán when the quarterly payments of rent became due ; notice 'and demand therefore, before the action was brought, were sufficient.

Defendant defaulted.