Rose M. Kagan and Central Republic Bank and Trust
   Company, Successor by Consolidation to Central
   Trust Company of Illinois, Appellants, v. Charles
   W. Gillett, Appellee.

Gen. No. 36,076.

O'CONNOR, J., dissenting in part.

Opinion filed February 6, 1933. Rehearing denied February 21, 1933.

FISHER, BOYDEN, BELL, BOYD & MARSHALL, for appellants; EARL K. SCHIEK, of counsel.

WILLIAM FRIEDMAN, for appellee.

MR. JUSTICE MATCHETT delivered the opinion of the court.

Plaintiffs brought an action in the municipal court on contract. Their claim was based upon a sublease of certain premises in Chicago. This sublease was made a part of the statement of claim. It is dated

December 9, 1915, and demised a term beginning February 1, 1916, and ending at noon January 31, 1926. By clause 18 of the sublease, which was in the form of a rider attached, the lessee was given the right, if not in default prior to the expiration of the demised term, to extend the lease for a further period of 10 years.

Plaintiffs claim (1) rent alleged to have become due as represented by a promissory note of defendant for the sum of $2,487.52, dated Chicago, Illinois, September 17, 1929, due 60 days after date; (2) other rent accruing under the covenants of the sublease after the beginning of the term as extended on January 31, 1926; and (3) damages claimed to be due on account of defaults in the covenants to keep the premises in repair and to deliver the same at the end of the term in as good condition as received, less ordinary wear and tear. It is claimed that defendant is liable for all these defaults by reason of a guaranty executed by him on December 9, 1915.

By an affidavit of merits defendant denied all liability. There was a trial by the court and a finding for plaintiffs in the sum of $225, on which judgment was entered, from which judgment plaintiff's appeal.

Neither findings of fact nor propositions of law were submitted. Defendant contends that for this reason no question of law reviewable by this court arises on the record. That contention could have been plausibly made at one time. *Harrison v. National Bank of Monmouth,* 207 Ill. 630. The question is now settled contrary to defendant's contention in *Pittsburgh, C., C. & St. L. Ry. Co. v. Chicago City Ry. Co.,* 300 Ill. 162. See also *Central Trust Co. of Illinois v. Hagen,* 249 Ill. App. 507; *Bitzer v. Southern Surety Co.,* 245 Ill. App. 295.

The trial judge, however, made a statement of his views of the law as applied to the facts from which the theory upon which the case was decided is apparent.

Defendant was held liable on the note, but payments made which (in the absence of specific directions by him) were applied by plaintiffs upon rent claimed to be due under the lease were by the trial judge credited upon the note, reducing the balance due thereon to the sum of $225, the amount for which judgment was entered.

It is apparent therefore that the court held that defendant was not liable upon his guaranty; that he was not liable on the covenants of the lease, and that neither by reason of the guaranty nor of the covenants was defendant liable for unpaid rent, for failure to keep the premises in repair, or for failure to deliver the same in the condition received, excepting ordinary wear and tear as provided by the covenants of the lease.

Upon this theory we must presume (since it was otherwise competent) the evidence of plaintiffs' agent as to the computation of the amount due under the terms of the lease was stricken out and the tendered evidence of a competent architect produced as a witness by plaintiffs as to the condition of the premises at the termination of the lessee's possession rejected.

As already stated, the sublease was dated December 9, 1915, and it demised a term beginning February 1, 1916, and ending at noon, January 31, 1926. On March 4, 1925, the Sher-Lak Hotel Company, which was then in possession, notified the lessors that it would exercise its option for the extension of the lease, and at the end of the stated term on January 31, 1926, it remained in possession. It continued in possession until April 13, 1931, when the possession thereof was surrendered to and accepted by plaintiffs. Plaintiffs contend that under the covenants of the lease and by reason of the written guaranty by defendant, defendant is liable for the payment of the rent and the performance of other covenants in the lease not

only prior to but after February 1, 1926, until possession was surrendered. Defendant contends that he is not liable; hence this controversy.

On the date of the execution of the sublease, December 9, 1915, defendant as a part of that transaction executed and delivered the following written guaranty, which was attached to the sublease:

"For Value Received, I hereby guarantee the payment of the rent and the performance of all and singular the agreements by the lessee, John Percy Baldwin, his heirs, legal representatives or assigns, to be kept or performed, according to the terms of the above rider and the Indenture of Lease to which it is attached, in manner and form as is in the said lease and in the said rider provided, and I do hereby waive any and all notice and any and all right to notice of default on the part of the said lessee, under the terms of the said rider and the said lease."

Thereafter, on November 26, 1918, defendant became the assignee of the sublease, the sublessors consenting in writing, and in consideration thereof defendant assumed all the obligations of the sublease without limitation. Afterwards, with the consent of the sublessors, defendant reassigned his interest as lessee to the Sher-Lak Hotel Co., and again in consideration of their consent he in writing guaranteed "the prompt performance . . . of all the agreements, covenants and conditions on the part of the lessee in said lease mentioned."

Defendant, however, contends that these obligations all ceased on January 31, 1926, at which time the demised term would have ended had it not been extended. There was no default in rent which accrued prior to that date, and he claims he is not liable for defaults which occurred thereafter either under the covenant to pay rent or repair or under other covenants of the sublease.

In brief defendant argues that his obligations as expressed in the guaranty should be construed *strictissimi juris*. He cites *Miller v. Stuart,* 9 Wheat. (22 U. S.) 680, which has been followed in a large number of Illinois cases. *Reynolds v. Hall,* 1 Scam. 35 (Rose's Notes). He also cites *Liverpool W. W. Co. v. Atkinson,* 6 East. 507, and *Lord Arlington v. Merrick,* 2 Saund. 411. In all these cases the courts were called upon to construe obligations of persons who had become gratuitous sureties upon certain official bonds. Defendant, assuming that he is a gratuitous surety, argues that the rule of liability as stated in 50 Corpus Juris 78, and the cases there cited should be held applicable.

Plaintiffs contend that the occupancy of the lessee after January 31, 1926, was pursuant to an "extension" of the lease and not a "renewal" of the same. They distinguish between an "extension" and a "renewal" and there are authorities which recognize this distinction.

In *Orton v. Noonan,* 27 Wis. 272, the covenant in a lease "to extend the term of the lease for the term of 99 years, provided," etc., was held to be a present demise of a future term. In *Salisbury v. Hale,* 29 Mass. (12 Pick.) 416, the suit was upon a guaranty which was under seal. The opinion of the court by Shaw, C. J., was that where the covenant was to pay rent, etc., "for such further term as the lessee may hold the same," the guarantor was liable.

In *Ingram v. Foster,* 205 Ky. 57, a lease provided that the lessees should have "an option at the end of three years to lease said building for another term of three years." The lessees gave written notice of the exercise of the option, being then, however, out of possession by reason of a fire which required the building to be repaired. The landlord refused to restore possession, and the lessees brought forcible detainer

proceedings and recovered judgment. It was held upon appeal that the authorities recognized a distinction between an option to renew and a right to extend; that the clause should be construed as granting the right to renew, but that since the lessees by giving notice had complied with the only requirement which by decisions of that court distinguished an extension from a renewal, the option clause would be construed as if it had granted the right to extend instead of the right to renew.

In *Stout v. Tobias,* 27 Ohio App. 113, 160 N. E. 874, there was a provision in a lease that the tenant should have the ''privilege of four additional years, $35 per month.'' The tenant held over without notice. It was held that the landlord could not maintain an action for possession. In *Shannon v. Jacobson,* 262 Mass. 463, 160 N. E. 245, the lease demised a term for three years ''with an option for renewal of said lease for five years more.'' This was held to be an option for renewal, and the opinion of the court said that the meaning of that word in leases was settled in that State; that the word renewal *''ex vi termini''* imports the giving of a new lease like the old one, while an option for an extension did not require or contemplate the execution of a new lease but was a simple prolongation of the original lease for a further term.

In *White v. Walker,* 31 Ill. 422, a defendant guarantor was held to have been released and discharged by a new agreement which superseded the original lease, the court holding that it was error to reject evidence tending to show this new agreement, although it was not under seal.

In *Brewer v. Thorp,* 35 Ala. 9, the lessor made a demise for one year with ''the privilege to retain the same house, at the same rent yearly, for as many years as she may wish.'' The guarantor of the lease was held not liable beyond the year, the tenant having

exercised her privilege to hold over. In *Kanouse v. Wise*, 76 N. J. L. 423, a lease for a term of one year was given with the privilege "to renew" this lease upon the same terms and conditions. The liability of the guarantor was held to cease at the end of the year.

In *Woods v. Doherty*, 153 Mass. 558, there was a demise for three years, with the right to renew for a further term, and it was held that the guarantor was not liable for the renewed term.

In *Cushing v. Cable*, 48 Minn. 3, the lessee made an agreement for the use of two boilers for a term of four months and for two months longer if the lessee should "renew." It was held that the guarantor was not liable for a longer term that six months. In *Fasnacht v. Winkelman*, 21 La. Ann. 727, a lease was given for one year with a privilege of "renewal" for five years, and it was held that a party who bound himself as surety for the lease, was not liable for the renewed term, unless it was shown that he consented.

In *Gadsden v. Quackenbush*, 43 So. Car. Law (9 Rich.) 222, a guarantor guaranteed the faithful performance of the covenants of a lease which was for a term of one year. The tenant continued in possession without objection, failed to pay the rent, and the lessors sued the guarantor. The court held that the guarantor was not liable, saying:

"The circumstances imply consent of both the original parties to a renewal of the contract. The law implies from this subsequent conduct a new contract on like terms with the preceding. To this the guarantor was neither in fact, nor in law, a party. It was a new transaction, and a new credit was given outside, and beyond any previous stipulation, and the plaintiff can look alone to him with whom he dealt."

In *Jones & Brindisi, Inc. v. Breslaw*, 250 N. Y. 147, 164 N. E. 887, the Court of Appeals of that State had occasion to consider a case very much like this one.

In that case defendants upon the execution of a lease signed the following guaranty: ''We hereby guarantee the payment of the rent as stipulated in above lease.'' The lease demised the premises for a term of two years and four months and by another clause provided, ''It is further understood and agreed by and between the parties hereto that six (6) months before the termination of the present lease, the Landlord will give the tenant the option of renewing the present lease for two (2) years upon the same terms and conditions and at the same rental.'' The tenants exercised their option, and upon their failure to pay the rent for the extended term, the landlord sued the guarantor. The trial court held that the guaranty applied only to the term of two years and four months and not to the extended term. The Court of Appeals said, ''This, we think, is contrary to the intention of the parties, as gathered from the surrounding circumstances and the wording of the instrument,'' and further said:

''The tenants had the right, which they exercised, of leasing the premises for the full term of four years and two months. The landlord was bound for this period. Why should the guaranty cover only two years of it? The words of the guaranty express no such limitation. They are: 'We hereby guarantee the payment of the rent as stipulated in above lease.' The rent stipulated in the above lease was for four years and two months if the tenants exercised the privilege of extension. They exercised the option and became bound to pay the rent stipulated in the lease. There was no new lease; none was required; all the stipulations and agreements were contained in the one instrument which by the election of the tenant, continued for four years and two months. (*Masset v. Ruh*, 235 N. Y. 462; *Orr v. Doubleday, Page & Co.*, 223 N. Y. 334.)''

Without a further review of the authorities we think the question in each case must be decided not precisely

upon the use of the word "renewal" or "extension" but rather upon the intention of the parties as expressed in the writing interpreted in the light of all the circumstances under which the agreement was entered into. Such seems to be the thought of the author in 2 McAdam on Landlord and Tenant, 4th ed., sec. 265, p. 948:

"Whether the guaranty is a continuing one or not depends upon the language of the contract interpreted according to the intention of the parties as such intention is manifested by their writings."

In the instant case, therefore, we look first to the language of the guaranty. It will be noticed that it expressly says that defendant guarantees "all" of the covenants, etc. One of these covenants provides for an extension upon condition. An intention to exclude seems inconsistent with the use of the word "all." The right to an extension was contained in a rider which was attached to the lease and made a part of it. It was numbered clause 18. The guaranty was attached to this rider.

Again, looking closely to the words of the guaranty it will be noticed that after providing for the guaranty of all the covenants of the lease it expressly adds "and . . . said rider." This language seems to manifest an intention to affirm rather than negative an obligation on the part of the guarantor for the term as extended. If it was the intention of the parties to exclude liability for the extended term, why was the rider which provided for the extension thus specifically mentioned in the guaranty? Thus the language of the guaranty indicates the intention of the parties that the guarantor should remain liable if the term was extended.

Moreover, the evidence does not indicate that this defendant was a mere gratuitous surety. The evidence shows that he had a personal interest in the business. He afterwards became, as we have already stated, an assignee of the lease assuming all its obligations and

covenants. He afterward assigned his interest upon the condition that he should remain liable upon all the covenants of the lease. We therefore hold that he was not a gratuitous surety and that he was liable upon his guaranty for the performance of the covenants of the lease during the extended period.

We hold, too, that defendant is liable upon covenants of the lease. When defendant became the assignee of the lease and entered into possession he was in privity with the lessors in two ways: he was, first, in privity of contract with them, and second, in privity of estate. The effect of the assignment by defendant with the consent of the lessors was to destroy this privity of estate, but it did not destroy the privity of contract, and defendant therefore remained liable upon his covenants under the lease. The cases are all to this effect. We will cite only a few authorities: *Midland Telegraph Co. v. National Telegraph News Co.*, 236 Ill. 476; *Geist v. Kaplan*, 195 Ill. App. 299; *Thompson v. Western Casket Co.*, 219 Ill. App. 184.

The evidence which was stricken shows that at the time the premises were delivered to plaintiffs on April 13, 1931, there was a balance due on account of rent of $12,233.89. It was error for the court to strike out this evidence.

We hold, too, that the court erred in excluding the evidence offered by plaintiffs tending to show the condition of the premises at the time when the same were surrendered. Plaintiffs contended that the lessee in possession had failed to keep the covenants of the lease concerning repair. This was contained in clause 13 of the lease which provided:

"Lessee further covenants and agrees that he will, at his own expense, make any and all ordinary repairs of every kind, nature and sort which may be required at any time during the term demised in the attached Indenture of Lease . . . and will keep the premises and each and every part thereof in good order and

repair . . . and upon the termination of the lease to which this rider is attached, in any way, will yield up the said premises to the said lessor in good condition, ordinary wear and tear and loss by fire excepted.''

The trial judge was of the opinion that it was not in contemplation of the parties that the lessee should be liable except where there was wanton and wilful destruction or unless circumstances such as would amount to negligence upon the part of the lessee were shown. We think this is not the reasonable construction of this covenant. Plaintiffs have cited three cases which hold the lessee liable in the construction of similar provisions: *Belgus Realty Corp. v. Irom,* 212 N. Y. S. 285; *Manchester Amusement Co. v. Conn,* 80 N. H. 455, 119 Atl. 69; *Connell v. Brownstein-Louis Co.,* 86 Cal. App. 610, 261 Pac. 331. Defendant does not cite authorities to the contrary, and his brief does not undertake to distinguish the cases cited.

We are not unaware of the difficulties which must arise in the determination of the liability imposed by a covenant of this kind under circumstances such as appear in this case. The lessee did not agree to make ''extraordinary'' repairs. The repairs he agreed to make were ''ordinary.'' Neither can he be held liable for any condition of the premises at the time the same were surrendered which was the result of ''ordinary wear and tear.'' Apparently, the lessee was not in default in this respect at the time notice of extension was given, since there was no objection then made on that ground. The liability, if any, of the defendant under this covenant must finally resolve itself into a very difficult and intricate issue of fact. It was, however, error to exclude the evidence tending to show the condition of the premises at the time of surrender. The question of law must await the determination of the facts.

For the reasons indicated the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

McSURELY, P. J., concurs.

MR. JUSTICE O'CONNOR dissenting in part: I think defendant was not liable for the cost of the repairs.