DAVID E. ROTH, Plaintiff-Appellant, v. MARY JAYNE DILLAVOU *et al.*, Defendants-Appellees.

Second District   No. 2—04—0840

Opinion filed September 8, 2005.

O'MALLEY, P.J., dissenting.

William F. White, of White & White, of Downers Grove, for appellant.

Matthew T. Caruso, of Roberts & Caruso, of Wheaton, for appellees.

JUSTICE CALLUM delivered the opinion of the court:

Plaintiff, David E. Roth, sued defendants, Mary Jayne Dillavou and Diane L. Teal, for possession of a residence and past-due rent arising from a lease agreement entered into by the parties. Teal, who

executed the agreement as co-signer, moved to dismiss (735 ILCS 5/2—619(a)(7), (a)(9) (West 2002)). The trial court granted Teal's motion. Roth moved to reconsider, and the court denied his motion. Roth appeals. We reverse and remand.

## I. BACKGROUND

On September 25, 2001, the parties entered into a lease agreement, whereby Dillavou and her five children would occupy the residence at 569 Maywood Lane in Lisle. Teal co-signed for Dillavou. The term of the lease was September 26, 2001, through June 30, 2002. Paragraph 10 of the agreement provides, in relevant part:

"If the Lessee retains possession of the Premises after the term of this lease expires, the Lessor may either accept further rent payments by the Lessee, in which case a month-to-month tenancy shall be created, or sue for possession; and Lessor shall be entitled to recover from Lessee all damages sustained by him as a result of Lessee's failure to vacate the Premises, including but not limited to lost rent, court costs and attorneys fees. In no case shall a holdover tenancy be created. In the event Lessee retains possession without Lessor[']s consent beyond the term of this lease, the monthly rental shall be 150% of the rental for the original term.

\* \* \*

\*\*\* Lessee or Lessor shall pay all reasonable attorneys' fees incurred by the other in enforcing the terms of this agreement as a result of a default by the other or in defending against acts or omissions of the other."

Paragraph 40 of the agreement, entitled "Acceptance of this lease by co-signer," provides:

"Co-signer for this lease, Diane Lynn Teal[,] agrees to be fully responsible for upholding all covenants of this lease, including monthly rent payments in the event that Mary Jayne Dillovou [sic] does not or cannot perform these obligations."

On October 31, 2003, Roth filed a complaint seeking possession of the residence, alleging that Dillavou unlawfully withheld possession and that defendants owed him $6,710 in rent, plus costs and attorney fees pursuant to the parties' lease agreement.

In an agreed order dated November 13, 2003, Dillavou agreed to grant possession of the premises to Roth, but reserved the question of damages. On February 11, 2004, Roth filed an amended complaint. He alleged that he obtained possession of the premises on January 14, 2004, and that both defendants were jointly and severally liable for rent and late fees for the period July 2003 through January 14, 2004. He sought total damages in the amount of $11,487.78, plus attorney fees and costs.

On March 19, 2004, Teal moved to dismiss Roth's complaint as to her. 735 ILCS 5/2—619(a)(7), (a)(9) (West 2002) (statute of frauds and other affirmative matter). She argued that the parties intended that Teal, as "guarantor/co-signer," would guaranty payment only during the lease term, September 26, 2001, through June 30, 2002. Noting that Roth sought payment for a period beginning in July 2003, 13 months after the expiration of the lease, Teal argued that she could no longer be held liable as guarantor after the expiration of the lease, where Teal did not sign a renewal lease and where Dillavou remained in possession based on successive oral month-to-month tenancies and failed to pay rent beginning in the thirteenth month after the expiration of the lease. Also, Teal argued that, where the contract provided there would be no holdover tenancy, Dillavou's possession constituted a tenancy at sufferance, and, as such, the tenant and guarantor had no privity with the landlord. Addressing the statute of frauds, Teal argued that she never signed any agreement obligating her to pay rent after the lease expiration and thus the statute of frauds barred Roth from claiming rent from her after that period.

On April 14, 2004, the trial court granted Teal's motion. It found that there was a novation that converted the lease into a month-to-month tenancy, which terminated Teal's obligations as guarantor. Because the terms changed, Teal could not be held to the same obligations. Roth moved to reconsider, and the trial court denied Roth's motion, reiterating that a month-to-month tenancy was created after the lease's expiration and that it constituted a new legal relationship that released the guarantor. Roth timely appealed.

## II. STANDARD OF REVIEW

A section 2—619 motion to dismiss admits all well-pleaded facts in the complaint together with all reasonable inferences that can be drawn from those facts in the plaintiff's favor (*Redwood v. Lierman*, 331 Ill. App. 3d 1073, 1076-77 (2002)), and it raises other defects or defenses that defeat the claim (*Krilich v. American National Bank & Trust Co. of Chicago*, 334 Ill. App. 3d 563, 569-70 (2002)). Such other matters may appear on the face of the complaint or may be established by the submission of additional evidence. *Krilich*, 334 Ill. App. 3d at 569-70. The trial court must consider whether the defendant presented facts constituting an affirmative defense that could defeat the plaintiff's cause of action. *Prodromos v. Poulos*, 202 Ill. App. 3d 1024, 1028 (1990). Where a cause of action is dismissed under a section 2—619 motion, the question on appeal is whether a genuine issue of material fact exists and whether the defendant is entitled to judgment as a matter of law. *Nowak v. St. Rita High School*,

197 Ill. 2d 381, 389 (2001). We review *de novo* a dismissal under sections 2—619(a)(7) and (a)(9). *Prodromos v. Howard Savings Bank*, 295 Ill. App. 3d 470, 474 (1998).

## III. ANALYSIS

Roth argues first that Dillavou's continued possession of the house after June 30, 2002, was permitted as a continuation of the original lease rather than pursuant to a new contract or lease term. He contends that the original lease never expired and thus neither did Teal's obligation. Roth relies on the language in the lease that provides that a month-to-month tenancy arises if the lessee retains possession of the premises. He argues that the trial court erred in finding that Roth's acceptance of rent after June 30, 2002, constituted a novation or new lease agreement. According to Roth, although the original lease term expired on June 30, 2002, the lease itself did not expire.

A tenant who remains in possession after his or her lease has expired becomes a tenant at sufferance. *A.O. Smith Corp. v. Kaufman Grain Co.*, 231 Ill. App. 3d 390, 398 (1992). At the landlord's sole option, a tenant at sufferance may be evicted as a trespasser or treated as a holdover tenant. A tenant at sufferance has only naked possession; he or she has no privity with the landlord. *Bradley v. Gallagher*, 14 Ill. App. 3d 652, 656 (1973). The possession can be put to an end whenever the landlord, acting promptly, wishes; no notice to quit or demand for possession is necessary. *Bradley*, 14 Ill. App. 3d at 656. A holdover tenancy is created when a landlord elects to treat a tenant, after the expiration of his or her lease, as a tenant for another term upon the same provisions contained in the original lease. Only the lessor, not the lessee, has the right to decide whether to treat the lessee as a holdover tenant. *Bransky v. Schmidt Motor Sales, Inc.*, 222 Ill. App. 3d 1056, 1061 (1991).

Even when a holdover tenancy is not created, the parties' conduct may create a month-to-month tenancy. *A.O. Smith Corp.*, 231 Ill. App. 3d at 399. Acceptance of monthly rental payments by the landlord will generally create a month-to-month tenancy. *A.O. Smith Corp.*, 231 Ill. App. 3d at 399; see also *Hoefler v. Erickson*, 331 Ill. App. 577, 584 (1947) ("it is the holding over and paying the same rent, without further agreement, that creates a tenancy from month to month"). Both a holdover tenancy and a month-to-month tenancy are governed by the terms of the original lease. *A.O. Smith Corp.*, 231 Ill. App. 3d at 399. However, a holdover tenancy lasts as long as the original lease term, while a month-to-month tenancy can last indefinitely, although it can be terminated on 30 days' notice. *A.O. Smith Corp.*, 231 Ill. App. 3d at 399.

■ In this case, the agreement clearly provided that no holdover tenancy would be created; rather, Dillavou's continued possession would be in the form of a month-to-month tenancy. Contrary to Teal's contention, a month-to-month tenancy is not a tenancy at sufferance in which no privity exists between the tenant and landlord. A month-to-month tenant holds the premises with the landlord's permission, whereas a tenant at sufferance wrongfully holds over after termination of his or her interest. Black's Law Dictionary 1466 (6th ed. 1990).

■ Guaranty contracts are to be strictly construed in favor of the guarantor. *Cohen v. Continental Illinois National Bank & Trust Co. of Chicago*, 248 Ill. App. 3d 188, 192 (1993). The guarantor of a lease, absent his or her consent, cannot be held liable for the lessee's obligations incurred during any extended term other than one secured in accordance with the lease's terms. *T.C.T. Building Partnership v. Tandy Corp.*, 323 Ill. App. 3d 114, 118 (2001). However, the guarantor is entitled to such benefit only where some doubt arises as to the meaning of the guaranty language. *Bank of America National Trust & Savings Ass'n v. Schulson*, 305 Ill. App. 3d 941, 946 (1999). Where the terms of a guaranty are clear and unambiguous, they must be given effect as written. *T.C.T. Building Partnership*, 323 Ill. App. 3d at 119. Moreover, a guaranty that is unequivocal in its terms must be interpreted according to the language used, because " 'it is presumed that the parties meant what their language clearly imports.' " *Bank of Homewood v. Sjo*, 113 Ill. App. 3d 179, 182 (1983), quoting *National Acceptance Co. of America v. Exchange National Bank*, 101 Ill. App. 2d 396, 402 (1968). Here, the guaranty unambiguously states that the guarantor will uphold "all covenants of this lease," and one of the lease covenants is the holdover provision, which contemplates a month-to-month tenancy.

Roth argues that a month-to-month tenancy following a set period of time is generally governed by the terms of the original lease. Thus, because the original lease here contemplated a month-to-month tenancy, Teal is not being obligated to anything more than she originally agreed to when the lease was executed. Teal relies on the language in section 10 of the lease that states that a month-to-month tenancy "shall be created" upon the lease expiration date, and she asserts that there is no language in the lease whereby she agreed that her liability would extend to any subsequent month-to-month tenancy.

There are no Illinois cases directly addressing whether a guaranty applies during a tenancy after the original lease term. However, we find *Kagan v. Gillett*, 269 Ill. App. 311 (1933), close and persuasive. In that case, the defendant executed a guaranty for the payment of rent and all of the covenants of a sublease and an attached rider. The

sublessor exercised an option for a lease extension. Addressing the defendant's obligation during the extended period, the court held that he was liable on his guaranty for the performance of the covenants during that period. *Kagan*, 269 Ill. App. at 321. Reviewing the guaranty language, the court noted that it guaranteed all of the lease covenants, including those in the rider, which provided for the extension. The court stated: "An intention to exclude seems inconsistent with the use of the word 'all.' " *Kagan*, 269 Ill. App. at 320. The court also found significant the fact that the guaranty specifically referred to the rider:

> "This language seems to manifest an intention to affirm rather than negative an obligation on the part of the guarantor for the term as extended. If it was the intention of the parties to exclude liability for the extended term, why was the rider which provided for the extension thus specifically mentioned in the guaranty? Thus the language of the guaranty indicates the intention of the parties that the guarantor should remain liable if the term was extended." *Kagan*, 269 Ill. App. at 320.

Although the lease here did not involve a separate document, we find the facts in *Kagan* substantially similar to the facts in this case. The separate document—the rider—in *Kagan* contained the provision for a lease extension. In this case, the analogous provision—the holdover provision—is contained in the lease itself. This placement renders superfluous a specific reference to the provision where the guaranty states that the guarantor agrees to uphold "all covenants of this lease."

We do not find that the fact that *Kagan* involved a lease extension, as opposed to a tenancy after a lease expiration, mandates a different outcome here. The *Kagan* court rejected the distinction made by courts in other jurisdictions between lease renewals and extensions and, instead, instructed that each case be decided "upon the intention of the parties as expressed in the writing interpreted in the light of all the circumstances under which the agreement was entered into." *Kagan*, 269 Ill. App. at 320. Nevertheless, we note that there is a split of authority on the question of whether a guaranty applies to an occupation under an extension or renewal of the original lease term. See, *e.g.*, C. Sumner, Annotation, *Liability of Lessee's Guarantor or Surety Beyond the Original Period Fixed by Lease*, 10 A.L.R.3d 582 (1966); M. Friedman, Friedman on Leases § 35.2 (4th ed. 1997) (an apparent majority of cases apply the guaranty to the occupation).

With respect to a holdover period, there is also a split of authority as to whether a guaranty applies. See, *e.g.*, 49 Am. Jur. 2d *Landlord and Tenant* § 821 (2005); C. Sumner, Annotation, *Liability of Lessee's*

*Guarantor or Surety Beyond the Original Period Fixed by Lease,* 10 A.L.R.3d 582, 585 (1966) ("There is some disagreement whether the surety is liable during additional occupancy where the lease, although giving the lessee no option, nevertheless makes express provision for the possibility that he might hold over, but the few cases in the area leave the matter inconclusive for the most part").

For example, in *G.H. Bass & Co. v. Dalsan Properties—Abilene,* 885 S.W.2d 572, 577 (Tex. App. 1994), the court held the surety liable for rent during a holdover period under a commercial lease. The holdover provision in that case stated that the lessee "shall be deemed to be occupying" the premises as a month-to-month tenant in the event it remained in possession of the premises after "the expiration of this lease and without the execution of a new lease." *G.H. Bass,* 885 S.W.2d at 575. The guaranty provision stated that the surety agreed to be jointly and severally liable with the lessee for rent and other charges "payable by" the lessor under the lease. The court rejected the surety's argument that it was liable under only the original lease and not under the month-to-month tenancy. It stated that the surety's obligation did not turn on the nature of the lessee's tenancy but, rather, was measured by the lessee's obligations under the lease's terms. Noting that the surety agreed to be liable for rent and other charges payable by the lessee under the lease and that the lease provided for payments in the event of a month-to-month tenancy, the court concluded that the surety was liable to the same extent as the lessee under the lease. *G.H. Bass,* 885 S.W.2d at 577.

In *Home Owners' Loan Corp. v. Strongs' Inc.,* 69 S.D. 81, 6 N.W.2d 446 (1942), the court came to the opposite conclusion. In that case, the lease's holdover provision stated that, where the tenant, with the landlord's consent, holds over after the lease expiration date, the tenant "shall become" a month-to-month tenant. The guarantors endorsed a guaranty in which they agreed that, in the event of the tenant's default in the payment of rent or the performance of the lease covenants, they would pay any arrears and any damages arising from the nonperformance of any covenants. The court held that the guarantors were liable for any default during the period covered by the lease, but not during the month-to-month tenancy. *Home Owners' Loan,* 69 S.D. at 83, 6 N.W.2d at 447. The court noted that the guaranty did not state that the guarantors agreed to pay rent under any agreement or consent given by the landlord that was separate from the lease and that placing liability upon the guarantors would lead to "absurd consequences," about which it did not elaborate. *Home Owners' Loan,* 69 S.D. at 83, 6 N.W.2d at 447. The court further determined that the lease did not purport to grant the tenant any right in the

leased premises beyond the original lease term. *Home Owners' Loan*, 69 S.D. at 83, 6 N.W.2d at 447.

We find the reasoning in *G.H. Bass* more sound than that in *Home Owners' Loan*. We find unpersuasive the *Home Owners' Loan* court's argument that the landlord's consent to a month-to-month tenancy was separate and apart from the lease, thus rendering the guaranty inapplicable. We do not believe that the contingent nature of the landlord's consent should absolve the guarantor from liability during the month-to-month tenancy. The consent and resulting month-to-month tenancy were contemplated in the lease agreement. The better reasoning is that, once a guarantor is on notice that a month-to-month tenancy *may* result if the tenant holds over and the landlord consents to the arrangement, the guaranty continues to apply. This is a fair and straightforward reading of the agreement and is one where the guarantor's obligations are measured by the lessee's obligations (*G.H. Bass*, 885 S.W.2d at 577).

■ Thus, we conclude that, here, the guaranty applied during the month-to-month tenancy. Teal executed the lease agreement as guarantor and agreed to uphold "all" of the lease covenants. She was thus on notice that a month-to-month tenancy could result if Dillavou held over after the expiration of the lease term. We reject Teal's argument that the reference that a month-to-month tenancy "shall be created" suggests that the month-to-month tenancy constituted a new agreement under which her guaranty is inoperative. The month-to-month tenancy automatically results when the lessee "retains possession of the Premises after the term of this lease expires" and the lessor "accepts further rent payments by the Lessee." This arrangement does not constitute a new contract, because it was contemplated in the lease agreement. In other words, Dillavou's continued possession of the premises was in accordance with an arrangement contemplated in the lease agreement and was not under an arrangement of which Teal as guarantor was unaware or not a party. That the arrangement was *contingent* upon the lessor's acceptance of further rent payments by Dillavou, as we discussed above, is irrelevant to Teal's liability under the guaranty.

We also reject Teal's argument that, unless there exists another writing satisfying the Frauds Act (740 ILCS 80/2 (West 2002)), her obligation as guarantor ended upon the expiration of the original lease term. As we explained above, Teal bound herself in the lease agreement to guaranty the initial lease period plus any month-to-month tenancy that followed. As that agreement was in writing and signed by her, the writing requirement was satisfied.

■ Finally, we disagree with the trial court's finding that there

was a novation of the lease. The elements of a novation are: (1) a previous, valid obligation; (2) a subsequent agreement of all the parties to the new contract; (3) the extinguishment of the old contract; and (4) the validity of the new contract. *Thomas v. Frederick J. Borgsmiller, Inc.*, 155 Ill. App. 3d 1057, 1061 (1987). Here, there was no allegation or evidence of a subsequent agreement. The lease itself defines the nature of Dillavou's possession and, as we determined above, the extent of Teal's obligation where Dillavou holds over after the expiration of the lease term. Indeed, the parties agree that this court can resolve the issues on appeal by looking only to the language of the lease agreement.

Because we reverse the trial court's dismissal, we need not address Teal's request for attorney fees.

## IV. CONCLUSION

For the reasons stated above, the judgment of the circuit court of Du Page County is reversed, and the cause is remanded for further proceedings.

Reversed; cause remanded.

GROMETER, J., concurs.

PRESIDING JUSTICE O'MALLEY, dissenting:

A guarantor is a favorite of the law. *Hensler v. Busey Bank*, 231 Ill. App. 3d 920, 926 (1992). He is entitled to stand on the strict terms of his obligation (*McHenry State Bank v. Y&A Trucking, Inc.*, 117 Ill. App. 3d 629, 633 (1983)) and is accorded the benefit of any doubt arising from the guaranty language (*T.C.T. Building Partnership*, 323 Ill. App. 3d at 119). The majority has no doubt that Teal is liable for holdover rent because "the guaranty unambiguously states that the guarantor will uphold 'all covenants of this lease,' and one of the lease covenants is the holdover provision." 359 Ill. App. 3d at 1028.

The terms of the guaranty are not quite so clear, in my view. The crux of the dispute here is the meaning of the term "covenant," which is not provided in the lease or guaranty. The term "covenant," in its wide sense, is used to indicate a contract, or an agreement "to act, or to refrain from acting, in a certain way." 20 Am. Jur. 2d *Covenants, Conditions and Restrictions* § 9 (1995). I do not share the majority's certainty that Dillavou was abiding by a covenant of the lease when she held over. As far as I can tell, nothing in the lease required Dillavou to hold over, and nothing in the lease required Roth to allow Dillavou to remain. Rather, Dillavou remained on the premises of her

own accord and Roth allowed her to remain of his own accord. These choices appear to have been entirely unconstrained by the lease. It merely begs the question to note, as does the majority repeatedly, that a month-to-month tenancy was "contemplated" in the lease. 359 Ill. App. 3d at 1031. Obviously, the lease did so provide, but a guarantor's liability is not necessarily coextensive with the obligations of the lease. It is all a question of what the guaranty requires. Here, Teal was obligated to uphold "all covenants" of the lease, but the genesis of the month-to-month tenancy did not appear to lie in the fulfillment of any covenant, but in the free choices of landlord and tenant. Indeed, if the holdover provision did not exist, a month-to-month tenancy would still have arisen, by operation of the common law. See *A.O. Smith Corp.*, 231 Ill. App. 3d at 399. Teal should not be held liable for an arrangement that apparently did not arise by operation of the covenants she pledged to uphold. Where there is any doubt, the guaranty must be construed in favor of the guarantor.

A rationale along these lines was articulated by the courts in *Home Owners' Loan,* 69 S.D. 81, 6 N.W.2d 446, and *Trolley Square Associates v. Nielson,* 886 P.2d 61 (Utah App. 1994). In *Home Owners' Loan,* the court said:

> "The written lease does not purport to grant to [the lessee] any right in the leased premises beyond the eighteen month period. Any occupancy of premises by [the lessee] after this period must, under the express terms of the lease, be with the consent of the lessor, and a consent other than the consent which the lessor gave when it signed the lease. We are, therefore, of the opinion that the occupation of the premises by [the lessee] during the period here in dispute was not under the written lease, but by reason of the consent of the lessor given entirely separate and apart from any stipulation contained in the lease." *Home Owners' Loan,* 69 S.D. at 83-84, 6 N.W.2d at 447.

The same rationale was echoed in *Trolley Square*:

> "The lease agreement did not create the obligation to pay rent under the month-to-month tenancy. Instead, the lease created an obligation to pay rent through December 31, 1984. While the lease agreement provides that any holdover after the expiration of the term, or extended term, was to be a month-to-month tenancy at the rental rate of the last month of the lease term, this did not obligate [the lessee] to stay, nor did it obligate [the lessor] to keep [the lessee] as tenants [*sic*]. The guaranty of lease only covered the obligations under the lease, not obligations incurred after the lease expired." *Trolley Square,* 886 P.2d at 69.

This, I believe, is the proper way of analyzing this case.

The potential scope of the guarantor's liability is relevant to the

interpretation of a guaranty. See *Home Owners' Loan*, 69 S.D. at 83, 6 N.W.2d at 447. The lease here places no limit on the duration of a month-to-month tenancy. Thus, under the majority's construction, the guaranty creates potentially indefinite liability for Teal. Confronted with a lease and guaranty relevantly similar to those now in question, the court in *Home Owners' Loan* rejected as "absurd" such a construction as the majority adopts today. 69 S.D. at 83, 6 N.W.2d at 447.