2026 IL App (2d) 250182-U
No. 2-25-0182
Order filed March 31, 2026

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

HAROLD E. WILKIN, JR., Plaintiff-Appellant,

v.

LJB HOMES LLC, Defendant-Appellee.

Appeal from the Circuit Court of DeKalb County.
Honorable Stephanie Klein, Judge, Presiding.
No. 24-SC-1140

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices Jorgensen and Schostok concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The trial court properly found that defendant's return of plaintiff's security deposit complied with state and local law; affirmed.

¶ 2   Plaintiff, Harold E. Wilkin, Jr., *pro se*, appeals the judgment in favor of defendant, LJB Homes LLC, pursuant to a lease agreement in which plaintiff was a tenant and defendant was the landlord. Plaintiff filed a small claims complaint against defendant seeking fees from his security deposit and other damages. Because we agree with the trial court that defendant's return of plaintiff's security deposit complied with both the DeKalb ordinance and the state statute, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4    On December 24, 2024, plaintiff filed a small claims complaint alleging that defendant owed him $800. In his complaint, plaintiff alleged that "the lease clearly states the security deposit is refundable within the law," but defendant had only returned $580. Plaintiff alleged that defendant owed him $120 for fees "for forcing plaintiff to find a process server and demand the security deposit." Plaintiff further alleged that defendant failed to send "itemized deductions within 30 days of move out, being a multi-unit landlord." In his complaint, plaintiff alleged that defendant "produced a false itemized deduction, claiming cleaning the room." As relief, plaintiff sought full payment of his security deposit, punitive penalties "up to twice the deposit," and $120 for process server fees.

¶ 5    On April 2, 2025, the court conducted a hearing on plaintiff's small claims complaint. Plaintiff's counsel waived opening argument and called Leroy Brummel as his first witness, who testified as follows. Brummel owned several rental properties in the City of DeKalb and served as property manager. Brummel had been a registered landlord with the City of DeKalb for the past eight years. Brummel entered into a lease agreement with plaintiff for unit 25 in a building with 14 units. Without objection, plaintiff entered the lease agreement into evidence. Brummel testified that the term of the lease was from May 10, 2023, to July 31, 2024. Though Brummel did not "know the exact date," plaintiff possibly vacated the premises on September 30, 2024.

¶ 6    Next, without objection, plaintiff entered sections of the City of DeKalb Municipal Code, §§ 10.02, 10.14 (DeKalb ordinance(s)) into evidence. When asked, Brummel was not sure if section 10.02 of the DeKalb ordinance stated that rental agreements that conflict with the DeKalb ordinance were void and against public policy. In addition, Brummel was not sure if his lease agreement contained any "prohibited terms."

¶ 7 Section 10.14 of the DeKalb ordinance concerned the return of security deposits. When asked whether section 10.14(a) of the DeKalb ordinance obligated him to return a security deposit within 30 days of the tenant vacating, Brummel responded that his lease stated "45 days. That's just the lease I've been using." Based on the 45-day lease term, Brummel was not sure if it was "contrary to the" DeKalb ordinance. Brummel agreed that paragraph 23 of the lease agreement required the tenant to pay attorney fees if the tenant was brought to court.

¶ 8 Brummel's handwritten paper regarding the cleaning of plaintiff's unit was also admitted into evidence without objection. Brummel agreed that the handwritten paper did not contain a date; Brummel wrote it "after" cleaning plaintiff's unit. When asked whether he sent plaintiff "a record of what date" he worked and "what hours" he "compiled," Brummel replied that he "didn't write down exactly what day [he] did it and times [he] started." When asked how he tracked the cleaning time, Brummel replied that he "looked at [his] phone what time [he] started and what time" he stopped cleaning.

¶ 9 A check written from Brummel's "LLC account" on November 9, 2024, for $580, was admitted into evidence without objection. The November 9, 2024, check was written the day after Brummel handwrote the November 8, 2024, cleaning paper. Brummel agreed that plaintiff's security deposit was $800.

¶ 10 A letter Brummel received from plaintiff, dated October 21, 2024, was entered into evidence without objection. Plaintff's letter demanded the return of his $800 security deposit. Brummel "just put [the letter] with the rest of the stuff," and did not write plaintiff a check for the security deposit the following day.

¶ 11    On cross-examination, Brummel agreed that the lease agreement term for plaintiff was to end on July 31, 2024. However, plaintiff did not move out on that date. Four or five days before he moved out, plaintiff "gave [Brummel] a paper" that "said he's moving out."

¶ 12    Brummel identified "a copy of the accounting that [he] made for the damages," the "cleaning expense." Brummel also identified a copy of the check he mailed to plaintiff, which he mailed to plaintiff on November 12, 2024. Plaintiff never questioned the charges for the room cleaning; Brummel "never heard from him." Cleaning plaintiff's unit took six hours of work at $35 per hour, plus $10 for supplies. Brummel explained that the walls had to be scrubbed because "there was grease all over them, all the woodwork and the ceiling," and the carpet had to be scrubbed with "bleach and carpet scrubber."

¶ 13    Plaintiff testified next as follows. Plaintiff vacated defendant's premises on September 30, 2024. Plaintiff provided a "notice of intent to move" in a letter that he mailed to defendant, which was entered into evidence without objection. The letter was a notice of plaintiff's departure, dated September 26, 2024, notifying defendant that plaintiff would vacate the premises on September 30, 2024. The letter, which was notarized and sent through the "UPS Store," contained a forwarding address for plaintiff.

¶ 14    Plaintiff's demand letters for the return of his security deposit were entered into evidence without objection. The first and second letters, dated October 21, 2024, were identical and sent by regular mail and by certified mail. The letter sent by certified mail was "[d]elivery refused" by defendant. Plaintiff's third letter to defendant, dated October 28, also demanded the return of his security deposit. The refused letter prompted plaintiff to hire an individual "to serve the October 28th letter" to defendant. The individual was a private investigator who did "process serving." The

affidavit based on the server's "service of the demand letter" was admitted into evidence over objection.

¶ 15 Plaintiff received a handwritten letter from defendant in the mail that stated room 25 with the following itemizations: wash walls for 1.5 hours, clean carpet for 3 hours, clean door frames for 1 hour, and clean baseboards for .5 hour, for a total of 6 hours; 6 hours at $35 per hour amounted to $210, plus $10 for cleaning supplies, which totaled $220; and, the deposit of $800 minus $220 resulted in a return of $580. Plaintiff admitted receiving a check from defendant for $580, dated November 9, 2024. Plaintiff was not certain, but he thought he received plaintiff's handwritten letter and check about one week later.

¶ 16 Plaintiff left the unit "[i]n good shape." Plaintiff vacuumed the room, wiped the baseboards, shelves and locker, and cleaned the refrigerator. No inspection took place. Brummel did not do an inspection of the unit when plaintiff vacated, because they were "in a hostile relationship."

¶ 17 During closing statements, plaintiff's counsel argued as follows. Despite being a registered landlord of the City of DeKalb, several sections of defendant's lease were contrary to the terms of "the ordinance." First, "section 3 of the lease" said that "the security deposit shall be returned within 45 days of the termination of the full term and surrender of possession." Plaintiff vacated the premises on September 30, 2024, and DeKalb ordinance § 10.14 stated "that security deposits need to be returned within 30 days." DeKalb ordinance § 10.14(a) further provided that the landlord was to receive a security deposit and was not to "withhold any part of that deposit unless the landlord has within 30 days of the date tenant vacated the premises furnished to the tenant an itemized statement of the damage caused to the premises and the estimated or actual cost of repairing or replacing each item." Plaintiff's counsel argued that section 3 of the lease agreement violated DeKalb ordinance § 10.14, in that it mandated a longer period than 30 days. Plaintiff's

counsel further argued that section 3 of the lease agreement violated the Security Deposit Return Act under Illinois law (765 ILCS 710/1 (West 2024)), which also provided for 30 days.

¶ 18    In addition, plaintiff's counsel noted that section 23. of the lease contained "unilateral entitlement to attorneys' fees by the landlord," which were more "prohibited terms." Plaintiff's counsel argued that "any landlord who knowingly attempts to enforce such a prohibited term or includes such a prohibited term in a lease shall be liable for an amount equal to one month's rent in addition to compensatory damages, including court costs and reasonable attorneys' fees."

¶ 19    Plaintiff's counsel went on to argue that defendant was obligated by both state law and by the DeKalb ordinance to "either return the full amount of the security deposit within 30 days or to provide an itemized statement of the deductions within 30 days." However, defendant wrote the check on November 9, 2024, and plaintiff did not receive it until November 16 or 17, 2024, which was more than 30 days "after the date he vacated," which violated DeKalb ordinance § 10.14(a)(1). As a result, having gone beyond 30 days, defendant was not "permitted to make any deductions" and acted in "bad faith." As a remedy, plaintiff's counsel sought "twice the amount of security deposit," along with court costs and reasonable attorney fees.

¶ 20    Defense counsel responded as follows. There was not a factual dispute, but rather a dispute of law. Though the lease ended on July 31, 2024, plaintiff stayed in the unit past the end date of the lease, making him a "holdover tenant on a month-to-month tenancy." Plaintiff stayed in the unit through August and September 2024, and then sent defendant "a notice that he's moving out" on September 26, 2024. However, in a month-to-month tenancy, there is "a 30-day notice of termination of the month-to-month tenancy," which plaintiff failed to do. Rather, plaintiff provided a "four-day notice," which would have been ineffective to terminate his month-to-month tenancy." {R. 50} As a result, the month-to-month tenancy "continued through the end of October." Plaintiff

"physically removed himself from the premises before the end of his month-to-month tenancy, and Mr. Brummel sent the breakdown of the security deposit deductions and the security deposit refund check on or about November 12, which was 12 days" after the termination of his tenancy. Defense counsel argued that "all of this talk about the terms of the lease and violating of the local ordinances by the lease" was "a red herring." The lease was gone, having ended on July 31, 2024. Because plaintiff "did not give a proper notice of the termination of his month-to-month tenancy, and Mr. Brummel gave a breakdown of the amount of the security deposit he was withholding in a timely fashion based on a month-to-month tenancy in correspondence with the requirements of the [DeKalb] ordinance and the statute," defense counsel argued that defendant should not be subject to "any of these draconian consequences" that plaintiff was seeking.

¶ 21　On rebuttal, plaintiff's counsel argued that defendant's utilization of a lease agreement that violated the DeKalb ordinance showed bad faith. In addition, DeKalb ordinance § 10.14 referred to "the date that the tenant vacated the premises," which was September 30, 2024. Plaintiff's counsel argued that if defendant wanted to "bring a counterclaim for the rent through the 30 days because he didn't get a proper 30-day notice, he's welcome to" do so, but did not. Plaintiff's counsel argued that the "security deposit just talk[ed] about the date the tenant vacated," as opposed to the date the tenancy "might have ended had [plaintiff] provided a proper 30-day notice." In other words, plaintiff's counsel argued that to pick a date other than September 30, 2024, "to start counting the 30 days" was "inappropriate."

¶ 22　At this point, the court inquired of plaintiff's counsel whether "this was a month-to-month tenancy situation after" the July 31, 2024, date, to which plaintiff's counsel replied, "That's correct, Judge. It continued as a month-to-month tenancy." At the outset, the court agreed "with much of what both" parties had said. On the one hand, there was a lease that did not "entirely comport with

the City of DeKalb ordinance." On the other hand, "when the written lease no longer really exists because it's ended, although it in certain respects defines" the "business relationship between the two parties, and there's no dispute that the month-to-month tenancy was created, and having stayed or not given the notice, there being a 30-day notice required to end the tenancy," the issue was whether plaintiff's notice that he was vacating started the 30-day timeframe. Assuming the 30-day timeframe had begun, the court did not think "that the tenant gets to shorten that or end that on their own volition." Thus, the court concluded that the right to occupancy did not end when plaintiff "actually moved out," meaning the court did not "find that the landlord's obligation to comply with the 30 days ended sooner than the right to occupancy ended." As a result, the return of the "documents about the cost to clean up the premises and the return of the portion of the security deposit" was not "untimely." Concluding that neither party acted in bad faith, the court found for defendant. Plaintiff timely appealed.

¶ 23                                    II. ANALYSIS

¶ 24    On appeal, plaintiff's first argument "is to show that there was a violation of municipal law by the landlord, but that his responsibility was to follow the law." Plaintiff argues that the return of his security deposit was not timely under either the DeKalb ordinance or state law. Plaintiff then frames his "second argument" as "a rebuttal to claims of the defense, including why the defense should have filed a counterclaim within the same trial." At the outset, we note that defendant has not filed an appellee's brief. However, because "the record is simple and the claimed errors are such that [we] can easily decide them without the aid of an appellee's brief," we proceed to the merits. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976). Further, because the facts in this case are essentially undisputed, our review of the trial

- 8 -

court's ruling in favor of defendant is *de novo*. See *In re Marriage of Hughes*, 322 Ill. App. 3d 815, 819 (2001).

¶ 25    Plaintiff's first argument regarding the return of his security deposit is premised on DeKalb ordinance §10.14(a), which provides that a landlord who has received a security deposit from a tenant to secure the payment or to compensate for damage to the rental unit rent may not withhold any part of that deposit as compensation for property damage unless the landlord has, within thirty (30) days of the date that the tenant vacated the premises, furnished to the tenant, delivered in person, by mail directed to the tenant's last known address, or by electronic mail, an itemized statement of the damage allegedly cause to the premises and the estimated or actual cost for repairing or replacing each item on that statement. Similarly, plaintiff relies on the Security Deposit Return Act, which provides that except as provided in subsection (b), a lessor of residential real property who has received a security deposit from a lessee to secure the payment of rent or to compensate for damage to the leased premises may not withhold any part of that deposit as reimbursement for property damage unless the lessor has, within 30 days of the date that the lessee vacated the leased premises or within 30 days of the date the lessee's right of possession ends, whichever is later, furnished to the lessee an itemized statement of the damage allegedly caused to the leased premises. 765 ILCS 710/1 (West 2024).

¶ 26    In the present case, it is undisputed that plaintiff's lease terminated on July 31, 2024, but plaintiff did not vacate the unit until September 30, 2024. It is also undisputed that plaintiff gave notice of his intent to vacate the unit on September 26, 2024, and that Brummel wrote a handwritten letter itemizing and deducting the cleaning expenses from plaintiff's security deposit. Brummel's handwritten letter was mailed to plaintiff around November 12, 2024, as well as a

check (dated November 9, 2024) for $580 for the return of plaintiff's security deposit. Plaintiff then received Brummel's handwritten letter and check approximately one week later.

¶ 27    While the lease is silent on this issue, both parties agreed at trial that plaintiff's failure to vacate the premises on July 31, 2024, the expiration date of the lease, created a month-to-month tenancy. Significantly, plaintiff's counsel agreed, based on the trial court's questioning before issuing a ruling, that the lease "continued [beyond the expiration date] as a month-to-month tenancy." As this court explained in *Roth v. Dillavou*, 359 Ill. App. 3d 1023, 1027 (2005), the parties' conduct may create a month-to-month tenancy, and acceptance of monthly rental payments by the landlord will generally create a month-to-month tenancy. *Id.*; see also *Hoefler v. Erickson,* 331 Ill. App. 577, 584 (1947) ("it is the holding over and paying the same rent, without further agreement, that creates a tenancy from month to month"). Thus, assuming that plaintiff paid rent to defendant in August and September 2024, such conduct created a month-to-month tenancy. See *A.O. Smith Corp. v. Kaufman Grain Co.*, 231 Ill. App. 3d 390, 399 (1992) (acceptance of monthly rental payments by the landlord will generally create a month-to-month tenancy); *Dobsons Inc. v. Oak Park Nat. Bank*, 86 Ill. App. 3d 200, 204 (1980) (payment of rent on a month-to-month basis in the absence of a contrary agreement gives rise to a month-to-month tenancy).

¶ 28    Given plaintiff's admission that the expired lease continued as a month-to-month tenancy, plaintiff was required to give 30 days' notice to terminate the lease. See *A.O. Smith Corp.*, 231 Ill. App. 3d at 399 (a month-to-month tenancy can last indefinitely but can be terminated on 30 days' notice); see also *Roth*, 359 Ill. App. 3d at 1027 (same). However, in the instant matter, plaintiff failed to give 30 days' notice to terminate the lease; rather he gave only four days' notice, in that he gave notice on September 26, 2024, and then moved out on September 30, 2024. Thus, as the

trial court found, plaintiff's four-day notice was ineffective to terminate his month-to-month tenancy, which technically lasted through the end of October 2024.

¶ 29    In this regard, we agree with the trial court that plaintiff's reliance on the date he vacated the unit, September 30, 2024, to start the 30-day clock for the return of his security deposit was improper. As the trial court determined, plaintiff was not allowed "to shorten that [30-day period] or end that" period on his "own volition." Rather, the right to occupancy did not end when plaintiff moved out on September 30, 2024, meaning that defendant's 30-day period to return the security deposit continued through October 2024.

¶ 30    Plaintiff's reliance on cases involving other types of tenancy, such as a holdover tenant or a tenant at sufferance, is unavailing given plaintiff's express admission at trial that the lease "continued as a month-to-month tenancy." See *WC Media, Inc. v. Village of Gilberts*, 2020 IL App (2d) 190250, ¶ 22 (it is well settled that the theory upon which a case is tried in the lower court cannot be changed on review). Indeed, consistent with the admission that the lease continued as a month-to-month tenancy, plaintiff's counsel recognized that defendant could have brought a counterclaim for the rent through October 2024, based on the lack of "a proper 30-day notice" from plaintiff, but defendant failed to do so. Given that defendant did not seek a rent payment from plaintiff for the month of October, there is no merit to plaintiff's second argument regarding "why the defense should have filed a counterclaim within the same trial."

¶ 31    In sum, because plaintiff's month-to-month tenancy extended his potential occupancy through October 2024, we agree with the trial court's finding that defendant complied with the 30-day requirement in DeKalb ordinance § 10.14(a) and the statute when returning plaintiff's security deposit, albeit with itemized deductions. Thus, contrary to plaintiff's argument, defendant's return of the security deposit was not untimely.

¶ 32                                    III. CONCLUSION

¶ 33    For the reasons stated, we affirm the judgment of the circuit court of DeKalb County.

¶ 34    Affirmed.